RUTH ELIN AUERBACH, SBN 104191
Attorney at Law
77 Van Ness Avenue, Suite 201
San Francisco, CA 94102
Tel: (415) 673-0560
Fax: (415) 673-0562
e-mail: attorneyruth@sbcglobal.net

Attorney for Plaintiff/Debtor,
KEYHAN MOHANNA

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re<br><br>KEYHAN MOHANNA,<br><br>              Debtor.<br>_____<br><br>KEYHAN MOHANNA,<br><br>              Plaintiff,<br>Vs.<br><br>VENTURES TRUST 2013-I-H-R BY MCM CAPITAL PARTNERS, LLC, ITS TRUSTEE; BSI FINANCIAL SERVICES<br><br>              Defendants.<br>_____ | Case No. 16-30388 HLB<br><br>Chapter 11<br><br>Adversary Proceeding No.<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br>**(11 U.S.C. §105**<br>**F.R.Bank.P. Rule 7065)**<br><br>**Date: September 21, 2016**<br>**Time: 2:30 P.M.**<br>**Courtroom: 19, 16th Floor**<br>**Hon. Hannah L. Blumenstiel** |

      KEYHAN MOHANNA ("Plaintiff" or "Debtor") hereby submits the memorandum in support of his motion for Temporary Restraining Order and Preliminary Injunction re-imposing the automatic stay and enjoining defendants from taking any action to enforce their lien rights with respect to the Deed of Trust against the Debtor's property at 1405 Greenwich Street, Unit 2, San Francisco, California, as follows:

MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND PRELIMINARY INJUNCTION

**BACKGROUND**

This is the Debtor's second bankruptcy case, having filed a previous Chapter on November 16, 2015, Case, No. 15-31425 in the San Francisco Bankruptcy Court to stop foreclosure actions and litigation involving the Property. At the time of the filing, the Debtor was incarcerated in the San Francisco County Jail for a period much longer than he anticipated and he did not have access to his financial files in order to timely complete his schedules and other Chapter 13 documents.

Once he was released, the Debtor filed this case in good faith, in pro per, in order to allow him the breathing room to have the Court determine the validity of liens and to sell the Property and use the proceeds to pay allowed claims.

The only real asset of this Chapter 11 estate is the Debtor's real property located at 1405 Greenwich Street, San Francisco, California ("The Property"), a six-unit residential building. The Debtor purchased the Property in 1987 and operated the Property as an apartment building since he acquired it. The Debtor mapped the units as condominiums and obtained approval to convert the units to condominiums, but the conversion to condominiums was never completed, and the Final Public Report has expired. The Debtor is not allowed to sell the units individually.

Between 2005-2008 the Debtor entered into nine loan agreements with Countrywide Savings & Loan. As a result of the mortgage loan crisis, Countrywide was dissolved and its assets, including this loan, were acquired by Bank of America.

The Debtor thereafter learned of violations of Federal and State law by Countrywide in connection with the loan transactions, and undertook discussions with Bank of America which resulted in the Bank agreeing to forgive five of the loans, but before the documentation could be finalized, Bank of America sold or transferred the loans. Despite the fact that the Debtor has written documentation supporting the forgiveness of the loans, the new owners of the loans have refused to release any of the liens.

Since the City of San Francisco's authorization to sell individual units as condominiums expired, it is the Debtor's intention to sell the building as a single property

and use the proceeds of sale to pay creditors, after obtaining a Court determination as to the validity of the various liens.

The Debtor has received a Letter of Intent from KM InStyle Hospitality/Transportation to purchase the building as a whole for $5,000,500. The proceeds of sale would be used to fund the Plan of Reorganization in this case. The sale of the property would generate sufficient funds to pay all claims, if they are determined to be valid, and provide equity for the Debtor to obtain a fresh start.

On or about August 29, 2016, this Court entered an Order in connection with a motion for relief from stay brought by HSBC with respect to one of the loans, that the automatic stay expired and is not in effect pursuant to Section 362(c)(3).

## CAUSE EXISTS TO REIMPOSE THE AUTOMATIC STAY

The Court, under its broad equitable powers, has the power to re-impose the automatic stay where the second case was filed in good faith. *In re Williams*, 341 B.R. 361 (Bankr. E.D. Pa 20016); *In re Whitaker*, 341 B.R. 336 (Bankr. S.D. Ga 2006). The Debtor's first case was dismissed because he could not file schedules and other pleadings on time. This was due to the fact that the Debtor had been incarcerated and could not get access to his financial records in order to complete schedules. As soon as he was released, he filed this second case, in pro per. Only after obtaining counsel, was he made aware of the provisions of Section 362(c)(3). Even counsel for HSBC at a recent motion for hearing on its motion for relief from stay stated that he was unaware of this Code section, so the debtor's ignorance is excusable.

The debtor has indicated that he is intending through this Chapter 11 case to have a single forum within which to obtain a determination as to the validity of a number of the liens against his property, and to sell the property in order to pay in full all creditors holding valid claims against him. Right now the debtor is having to deal with litigation pending in a number of Courts which could lead to inconsistent results and duplicative efforts and expense. He cannot afford to hire attorneys to defend him in each of these actions, and it is not in the economic interest of the creditors of the estate that he do so even if he could find

MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND PRELIMINARY INJUNCTION
Case: 16-03087   Doc# 2-2   Filed: 09/16/16   3   Entered: 09/16/16 13:52:25   Page 3 of 6

the resources.  Re-imposing the automatic stay is consistent with the very policies behind bankruptcy law.  At the core of bankruptcy law is the policy of obtaining a maximum and equitable distribution for creditors*.  In re Rinard*, 451 B. R. 12 (Bankr. C.D. Cal. 2011, citing **BFP v. Resolution Trust Corp**, 511 U.S. 531, 563, 114 S. Ct. 1757, 128 L.Ed.2d 556 (1994).

Without the automatic stay, a creditor race to the Courthouse exists, which overturns two other overarching premises of bankruptcy law:  a fresh start for an honest debtor and equal treatment among classes of creditors.  ***In re Rinard, id***.

### CAUSE EXISTS FOR THE ISSUANCE OF A PRELIMINARY INJUNCTION

As set forth by the United States Supreme Court, the Court shall grant injunctive relief under Rule 65, made applicable to bankruptcy cases by Rule 7065, if the Debtor can show that:

(1) the party seeking the injunction will suffered an irreparable injury;

(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4) that the public interest would not be disserved by the issuance of the injunction. ***Winter v. Natural Res. Def. Council***, 555 U.S. 7, 129 S. Ct. 365, 373 (2008).

(1) The Debtor will suffer irreparable harm absent an injunction.  As set forth above, the Debtor's property at 1405 Greenwich Street is the main asset of the estate.  The Debtor had started the process of converting the units to condominiums, but the public report lapsed before the Debtor could finalize it (contrary to assertions of counsel at prior hearings, the debtor did not intentionally cause it to lapse).  It has been the Debtor's home and major source of income for many years.  The property is in a state of limbo, in that the debtor cannot sell the units as condominiums and needs to obtain a resolution of the various

disputes with lenders prior to being able to deliver clean title to the entire building. If he can sell the building, he will receive enough money to not only pay all the secured claims, but all creditors and have some money left over for his fresh start.

In this case there is a significant dispute as to the validity of the Defendant's lien, in that prior to the commencement of this case, and prior to the assignment of the deed of trust to Defendant, Bank of America forgave the underlying indebtedness and issued to the Debtor a 1099C evidencing the cancellation of the debt.

An injunction is necessary to prevent the Debtor from losing his property while trying to obtain a determination as to the validity of the defendant's lien.

(2) Monetary damages would be insufficient to make the debtor whole. As stated above, the building is the Debtor's home as well as a source of income. It consists of six units. The lenders each have a claim to only one of the units. Because of the limbo status of the condominium conversion, the Debtor cannot sell the units individually, so his plan is to dispose of the property as a whole. If the Debtor is successful in avoiding the liens as to some of the units, and the other lienholders are allowed to foreclose on their units, the overall value to the Debtor would be significantly undermined, and there would be confusion in what the Debtor could and would be able to sell.

There is sufficient equity in the property to allow the debtor to satisfy claims and to also pay other creditors and have something left over for himself.

(3) A balancing of the hardships also tips in favor of the granting of the relief. There would be little or no harm to the creditor should the injunction issue until such time as the property rights of the parties can be determined by this Court. The property is not depreciating in value. The debtor maintains insurance on the property. As set forth above, there would be substantial harm to the Debtor should the injunction not issue and creditors were allowed to proceed to enforce invalid liens against the property.

(4) Granting injunctive relief as requested would serve the public interest for the same reasons set forth in the previous section regarding imposing the stay: It would serve the policies that are at the very core of bankruptcy laws, the policy of obtaining a maximum and equitable distribution for creditors and allowing the debtor his fresh start.

## CONCLUSION

Based on the foregoing, the Plaintiff respectfully requests that this Court grant his motion for order re-imposing the automatic stay, and grant him injunctive relief prohibiting the defendant from pursuing any claimed lien rights or other enforcement of the underlying debt until such time as this lawsuit may be finally determined.

Respectfully submitted,

LAW OFFICE OF RUTH AUERBACH


By:___/s/ Ruth Elin Auerbach_____
RUTH ELIN AUERBACH, Attorney for
Plaintiff, KEYHAN MOHANNA